# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

DAVID BURNET POWELL,

        Petitioner,

                                    Case No. 17-cv-11756

    v.                               Hon. Matthew F. Leitman

JACK KOWALSKI,[1] WARDEN,

        Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF No. 1) AND (2) GRANTING IN PART AND DENYING IN PART A CERTIFICATE OF APPEALABILITY

Petitioner David Burnet Powell is a state prisoner in the custody of the Michigan Department of Corrections. Through counsel, Powell has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 seeking relief from his state-court conviction and sentence for second-degree criminal sexual conduct, Mich. Comp. Laws § 750.520c(1)(a). (*See* Pet., ECF No. 1.) Powell claims that he received ineffective assistance of counsel and that mandatory lifetime electronic monitoring without an individualized risk assessment violates his due process rights. (*See id.*)

The Court has carefully reviewed Powell's claims and the record and concludes that he is not entitled to federal habeas relief. Accordingly, the Court will

---

[1] The Court amends the caption to reflect the name of Powell's current warden. *See* Rule 2(a) of the Rules Governing § 2254 Cases, 28 U.S.C. foll. § 2254.

**DENY** his petition. The Court will also **GRANT IN PART AND DENY IN PART** a certificate of appealability.

## I

## A

On August 18, 2014, Powell appeared in state court for a plea hearing in two separate cases. (*See* Plea Hrg. Tr., ECF No. 5-6, Page.ID 412.) He was represented by retained counsel Ronald Bayot in both cases. (*See id.*)

In the first case, Powell pleaded no contest to one count of second-degree criminal sexual conduct ("CSC2") with a child under the age of 13. (*See id.*, PageID.416.) The child was the daughter of Powell's then girlfriend, a woman named Jacolyn Sheldon. Powell entered a no contest plea because he was unable to "recall the events to form a factual basis" due to intoxication. (*Id.*, PageID.412.) The factual basis for the plea came from the police report. That report quoted E.B., the child victim[2], as saying that "Daddy" (referring to Powell) penetrated her "privates" with his finger. (*Id.*, PageID.416-417.)

During Powell's plea colloquy on the CSC2 charge, and prior to Powell's entry of his plea, both the court and Bayot informed Powell that if he pleaded no contest, he would be subject to lifetime electronic monitoring. The court first told

---

[2] In the state court records, the minor victim is referred to alternatively as "E.B." and "Ellie." This Court will refer to her in this Opinion and Order as "E.B."

Powell that his sentence "does involve lifetime electronic monitoring." (*Id.*, PageID.415.) Then, immediately before Powell offered his no contest plea, there was a short break in the proceedings, and after that break, Bayot stated on the record that Powell "has now been advised of the necessity of the electronic monitoring." (*Id.*, PageID.416.)

In the second case, Powell pleaded guilty to charges of conspiracy to commit a controlled substance offense, unlawful use of a motor vehicle, and lying to a peace officer. (*See id.*, PageID.416, 420.) One of Powell's co-conspirators and co-defendants in the controlled-substance case was Sheldon. (*See id.*, PageID.418.)

**B**

Shortly after the plea hearing, Bayot filed a motion to withdraw Powell's plea to the CSC2 charge. (*See* Bayot Mot., ECF No. 1-15, Page.ID 123-124.) Bayot argued that Powell should be permitted to withdraw his plea because he (Bayot) had not advised Powell about the lifetime electronic monitoring requirement before the plea hearing, and, as a result, Powell had not had enough time to consider that aspect of his sentence before entering the no contest plea. (*See id.*)

A few weeks later, Powell retained a new attorney, Shannon Smith. Smith then filed a second motion to withdraw Powell's no contest plea. (*See* Smith Mot., ECF No. 1-16.) The primary basis of Smith's motion was that Bayot, Powell's former counsel, had an irreconcilable conflict of interest:

12. Counsel has discovered serious, material conflicts of interest with Mr. Bayot's representation of Mr. Powell. See Michigan Rules of Professional Conduct ("MRPC") 1.7.

13. Mr. Bayot's conflict of interest not only violates the Michigan Rules of Professional Conduct, but calls in to question the integrity and fundamental fairness of the proceedings, and has specifically deprived Mr. Powell of his fundamental state and federal constitutional rights.

14. A conflict of interest exists between Mr. Bayot's representation of Mr. Powell in these matters and his representation of Jacolyn Sheldon as a co-defendant and in other matters. This will be fully explained in the attached Brief in Support of this Motion.

15. Ms. Sheldon is a *named co-defendant* in case number 14-005933-FH, and Mr. Bayot also represents Ms. Sheldon in that proceeding. See Exhibit E, at ¶ 9.

16. Counsel also discovered that Mr. Bayot also represented Ms. Sheldon in a parental rights termination case involving her six-year old daughter, EB. EB is the complainant in the criminal sexual conduct case number 14-005932-FC. Exhibit G - Appearance for Mr. Bayot in case number: 13-006920-NA, petition number 13-103.

17. Further, the petition in case number 13-006920-NA cited to allegations and evidence in case number 14-005932-FC. Exhibit H - Portion of Attachment 'A' to Amended Petition (Redacted).

18. In the child protective proceeding where Mr. Bayot represented Ms. Sheldon, Defense Counsel discovered materials right in the Court file that would have been essential and critical to Mr. Powell's defense, including a report from a social worker documenting that the complainant was sexually abused by another person. Mr. Bayot never disclosed his knowledge of this information

to Mr. Powell, despite the fact that he was an attorney of record on the file, was served with the pleadings in that case and was aware of very favorable information to Mr. Powell. Further, the complainant against Mr. Powell in the criminal sexual conduct case, EB, has serious and significant psychiatric issues and psychological issues that would have been paramount to Mr. Powell's defense. Not only did Mr. Bayot not pursue this information as a part of Mr. Powell's defense through proper motions in the criminal court, but he had access and direct knowledge about this this information pursuant to his representation of the complainant's mother in the NA case.

19. Moreover, Ms. Sheldon is not only listed as material witness by the Prosecution in both cases against Mr. Powell, but Ms. Sheldon also initially reported the allegation of criminal sexual conduct to law enforcement, thus prompting the investigation and resulting in criminal charges being filed against Mr. Powell in case number 14-005932-FC. Exhibit I - Complaints in case numbers 14-005932-FC and 14-005933FC; Exhibit J - People's Witness And Exhibit List in case number 14-005933-FH; Exhibit K - Portion of MSP Original Incident Report (Redacted).

20. Attorney Bayot's conflict of interest was never disclosed to Mr. Powell, nor did Mr. Powell ever consent to or waive these conflicts. See Exhibit E, at~ 14. Upon speaking with Mr. Bayot, Defense Counsel learned that Mr. Bayot did have Ms. Sheldon sign a waiver on the conflict of interest, however, Mr. Powell was never even advised of the conflict.

(*Id*. PageID.128-130; emphasis in original.)  Smith also argued that the court should

allow Powell to withdraw his plea because Bayot had failed to adequately advise

Powell with respect to the requirement of lifetime electronic monitoring:

24. Further, Mr. Bayot rendered ineffective assistance of counsel by failing [to] advise Mr. Powell of the mandatory lifetime electronic monitoring requirement that Mr. Powell would be sentenced to as a result of his plea to second-degree criminal sexual conduct (as the complainant was under 13 years old). Further, when the Court informed Mr. Powell of the mandatory lifetime electronic monitoring requirement during the plea proceeding, Mr. Bayot failed to properly counsel Mr. Powell regarding the mandatory sentence and failed to move for plea withdrawal. Thus, Mr. Powell rendered an involuntary plea and plea withdrawal should be permitted.

(*Id.*, PageID.130.)

## D

The trial court granted an evidentiary hearing on the conflict of interest issue. Powell, Bayot, and attorney Stephanie Farkas (an associate of Smith, Powell's newly-retained counsel) testified at the hearing.

Farkas testified first. She explained that she had reviewed certain filings in the official court file for a case involving the termination of Sheldon's parental rights of E.B. She said that she found a report by a social worker attached as an exhibit to one of the motions in that case. In the report, the social worker noted that E.B. had reported being sexually abused by a person other than Powell. (*See* 11/17/2014 Evid. Hrg. Tr. at 19, ECF No. 1-17, PageID.202). Farkas said that this report would have been favorable to Powell's defense against the CSC2 charges. Farkas further testified that Bayot was Sheldon's attorney in the parental rights termination case

when the report was filed with the court and that a proof of service had been filed showing that Bayot received the report.

Powell and Bayot testified after Farkas, and they offered substantially different versions of events. Powell testified he had no idea that Bayot represented Sheldon in the parental rights termination case and he never saw the report on E.B. that was potentially favorable to him. (*See id.* at 27-28, PageID.204.) He said that he hired Bayot because he heard Bayot was effective in CSC cases, and he insisted that he never would have hired Bayot had he known that Bayot also represented Sheldon. (*See id.* at 26-27, PageID.204.) Powell felt that Bayot's failure to investigate witnesses and possible other perpetrators was the result of a conflict of interest and Bayot's loyalty to Sheldon. (*See id.*) Powell did acknowledge though that he told Bayot he did not want E.B. to have to testify at Powell's trial. (*See id.* at 35, PageID.206.)

Bayot testified that Powell knew when he (Bayot) was hired that Bayot also represented Sheldon in the parental termination case. (*See id.* at 48-49, PageID.209.) Bayot said that Powell believed that Bayot's involvement in the parental termination case would give Bayot inside knowledge that would aid Powell in his CSC case. (*See id.* at 45-46, PageID.208-209.) Bayot also testified that he reviewed the social worker's report on E.B. with Powell "line by line." (*Id.* at 51, PageID.210.)

With respect to the alleged conflict of interest, Bayot testified that he did not believe that there was a conflict in his simultaneous representation of Sheldon (in the parental rights termination case) and Powell. (*See id* at 63, PageID.213.)  Bayot then said that even though he personally did not believe there was a conflict, he nonetheless (1) informed Powell that he represented Sheldon in the parental rights termination case and (2) asked Powell if Powell had any objection to his (Bayot's) simultaneous representation of Powell and Sheldon. (*See id.* at 50, PageID.210.) According to Bayot, Powell said that he had no objection. (*See id*.)   Bayot also testified that he and Powell "discussed" the conflict issue and that Powell "waived any conflicts" that may have existed in Bayot's simultaneous representation of Powell and Sheldon. (*See id.* at 64, PageID 213.)  However, Bayot acknowledged that he neither obtained a conflict waiver in writing nor placed Powell's waiver of the conflict on the record. (*See id.* at 63, 66, PageID.213-214.)

## E

Following the hearing, the trial court issued an Order and Opinion denying the motions to withdraw Powell's plea.  As explained in further detail below, the court held that to the extent Bayot's simultaneous representation of Powell and Sheldon created a conflict, Powell waived that conflict. (*See* ECF No. 1-19, PageID.239.)  The court also held, in the alternative, that Powell had not established that any alleged conflict prejudiced him. (*See id.*, PageID.240.)  Finally, the court

held that Powell's plea was knowing and voluntary because he was fully informed prior to his plea that he would be subject to lifetime electronic monitoring. (*See id.*)

Powell moved for reconsideration of the court's opinion, and the court denied that motion. (*See* ECF No. 1-21.)

## F

On January 20, 2015, the state court sentenced Powell to a term of seventy-two months to fifteen years incarceration on the CSC2 charge. (*See* Sent. Hrg. Tr., ECF No. 5-9, PageID.465.) He received a sentence of time served for the three other charges. (*See id.*, PageID.464.)

## G

Following Powell's sentencing, he filed an application for leave to appeal with the Michigan Court of Appeals, raising the following issues:

> I. The trial court erred in denying Powell's motion to withdraw his plea, where he received ineffective assistance of counsel due to conflicts of his interest and counsel's failure to advise Powell on mandatory lifetime electronic monitoring (LEM).
>
> II. Mandatory LEM is unconstitutional as it violates due process and Powell's right to be free of unreasonable searches.
>
> III. Michigan sentencing guideline offense variable 3 was improperly applied to Powell's sentence.
>
> IV. Offense variables 4, 20, and 11 were also improperly applied.

(ECF No. 5-10, PageID.483.) The Michigan Court of Appeals denied leave to appeal "for lack of merit in the grounds presented."[3] (ECF No. 1-25, PageID.348.) Powell also sought leave to appeal in the Michigan Supreme Court, raising only the first two issues quoted above: ineffective assistance of counsel and the unconstitutionality of mandatory lifetime electronic monitoring. (*See* ECF No. 5-11, PageID.897.) That court denied leave "because [it was] not persuaded that the questions presented should be reviewed by this Court." *People v. Powell*, 880 N.W.2d 536 (Mich. 2016).

## II

Powell, through counsel, filed his petition on June 2, 2017. (*See* Pet., ECF No. 1.) In the petition, Powell raises the following two issues:

> I. Petitioner was denied the effective assistance of counsel and due process of law, in violation of the Sixth and Fourteenth Amendments, where his attorney labored under an actual conflict of interest while representing him and failed to properly advise him about mandatory lifetime electronic monitoring.

> II. Petitioner was denied the right to due process, in violation of the Fifth and Fourteenth Amendments, where he was sentenced to mandatory lifetime electronic monitoring without an assessment of risk or consideration of his likelihood to reoffend.

(*Id.*, PageID.28, 33.)

---

[3] The Michigan Court of Appeals did order a remand on a sentencing question not at issue here. (*See* ECF No. 1-25, PageID.348.)

### III

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2241 *et seq.*, sets forth the standard of review that federal courts must use when considering habeas petitions brought by prisoners challenging their state-court convictions. AEDPA provides in relevant part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

In reviewing a claim under AEDPA, this Court must "give appropriate deference to the last state court to issue a reasoned opinion on the issue." *Hoffner v.*

*Bradshaw*, 622 F. 3d 487, 505 (6th Cir. 2010) (quoting *Payne v. Bell*, 418 F.3d 644, 660 (6th Cir. 2005).  Where a state appellate court issues an unexplained order on the merits of a petitioner's claim, this Court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, __ U.S. __ 138 S. Ct. 1188, 1192 (2018).

In this case, as explained above, the state trial court issued a reasoned decision on the merits of Powell's ineffective assistance claims, and the Michigan Court of Appeals denied leave to appeal for "lack of merit" presented.  While the Court of Appeals' order is a merits adjudication for AEDPA purposes, *see Werth v. Bell*, 692 F.3d 486, 493 (6th Cir. 2012), the Court will "look through" that order and give deference to the state trial court's decision on the ineffective assistance claims.

## IV

Powell argues that he was denied the effective assistance of counsel because (1) Bayot had an actual conflict of interest due to Bayot's representation of Sheldon and (2) Bayot failed to provide proper advice about the requirement of lifetime electronic monitoring.  The Court will examine each of these grounds separately.

**A**

Ineffective-assistance claims are reviewed under the two-part test described in *Strickland v. Washington*, 466 U.S. 668 (1984). First, a defendant must show that his counsel's performance was deficient. *See id.* at 687. "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. Second, a defendant must show that the deficient performance prejudiced the defense such that the defendant was denied a fair trial. The test for prejudice is whether "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. On habeas review, the question is "not whether counsel's actions were reasonable," but "whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington v. Richter*, 562 U.S. 86, 105 (2011) ("The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so.")

The Sixth Circuit has explained that a district court should apply the following standards in assessing conflict-of-interest-based ineffective assistance claims on habeas review:

13

When a petitioner asserts counsel's ineffectiveness arising from a conflict of interest, "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'" *[Strickland*, 466 U.S.] at 692, 104 S.Ct. 2052 (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 345–50, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980)). To prevail on a claim that he was denied his right to conflict-free counsel, a defendant must demonstrate "an actual conflict of interest." *Wood v. Georgia*, 450 U.S. 261, 273, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981). An "actual conflict," for purposes of the Sixth Amendment, is "a conflict of interest that adversely affects counsel's performance." *Mickens v. Taylor*, 535 U.S. 162, 172 n.5, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Sullivan*, 446 U.S. at 350, 100 S.Ct. 1708. This Court has observed that "[i]n *Mickens v. Taylor*, the Supreme Court found that the presumed standard of *Sullivan* was clearly established only in the situation of a conflict of interest due to multiple concurrent representation," and therefore "has consistently held that, for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, including successive representation, the *Strickland* standard applies." *Stewart v. Wolfenbarger*, 468 F.3d 338, 350–51 (6th Cir. 2006) (collecting cases).

The Supreme Court in *Mickens* stated that "as a general matter, a defendant alleging a Sixth Amendment violation must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 535 U.S. at 166, 122 S.Ct. 1237. The Supreme Court recognized, however, that there are exceptions to this general standard where the burden is lessened. For example, "a defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." *Id.* at 171, 122 S.Ct. 1237

(quoting *Sullivan*, 446 U.S. at 349–50, 100 S.Ct. 1708) (emphasis added). However, the Supreme Court stated that "when the trial judge is not aware of the conflict (and thus not obligated to inquire) ... prejudice will be presumed only if the conflict has significantly affected counsel's performance—thereby rendering the verdict unreliable, even though *Strickland* prejudice cannot be shown." *Id.* at 172, 122 S.Ct. 1237.

*Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 843–44 (6th Cir. 2017).

**B**

The Court first turns to Powell's claim that he was denied the effective assistance of counsel because his counsel, Bayot, had a conflict of interest due to Bayot's concurrent representation of Sheldon.  The state trial court considered that claim in the context of Powell's motions to withdraw his CSC2 plea and denied relief:

> "[A]fter a plea has been accepted by the trial court, there is no absolute right to withdraw the plea." *People v Eloby,* 215 Mich App 472, 474-75; 547 NW2d 48 (1996). MCR 6.310(B)(1) provides that a defendant may withdraw a plea "only in the interest of justice." The defendant has the burden of establishing a "fair and just reason" for withdrawal of that plea. If defendant meets that burden, then the prosecution has the burden of showing that substantial prejudice would result from allowing withdrawal of the plea." *People v Patmore.* 264 Mich App 139, 149- 150; 693 NW2d 385 (2004) (quotations and citation omitted). "Fair and just reasons include reasons like a claim of actual innocence or a valid defense to the charge." *People v Fonville,* 291 Mich App 363,378; 804 NW2d 878 (2011). A defendant's claim to have been confused about the plea does not warrant withdraw if the record demonstrates

that defendant understood the nature and factual basis of the plea. See *People v Everard,* 225 Mich App 455, 460-61; 571 NW2d 536 (1997).

Defendant first argues Bayot had a conflict of interest due to his representation of Jacolyn Sheldon. *The primary issue before the Court is whether defendant waived any conflict.*

In Michigan, MRPC 1.7 provides in part:

> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer ' s responsibilities to another client or to a third person, or by the lawyer's own interests unless:
>
> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>
> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risk involved.

Additionally, as stated in *People* v *Smith,* 456 Mich 543, 556-58; 581 NW2d 654 (1998), quoting *Cuyler v Sullivan,* 446 U.S. 335, 350; 100 S Ct 1708; 64 L Ed 2d 333 (1980), 'in order to demonstrate that a conflict of interest has violated his Sixth Amendment rights, a defendant 'must establish that an actual conflict of interest adversely affected *his* lawyer's performance.'" See also *People v Rhinehart ,* 149 Mich App 172, 17 6; 385 NW2d 640 (1986) (a defendant alleging a conflict of interest must show that the conflict affected *his* attorney's representation).

*Defendant maintains that he was unaware Bayot represented Sheldon in the [parental termination] case. He further testified that he did not waive any conflict of interest. This Court does not agree.*

At the plea withdraw hearing, *Bayot testified that he thoroughly discussed the matter with Sheldon and defendant to confirm they would waive any conflicts before trial. Bayot testified that they both agreed to his representation and verbally agreed to waive any conflict.*

Specifically, Bayot testified that defendant knew about the conflicts "from the moment I started representing him." Bayot also explained that he represented Sheldon in the NA case, and defendant had "no objection." Perhaps most importantly, Bayot testified that the allegations contained in the document from Barbara Cross were shown to defendant "line by line." *This testimony is both compelling and persuasive. The Court, therefore, finds that the requirements for waiver have been satisfied.*

Defense counsel has placed great emphasis on the fact that there is no signed document evidencing a waiver of any conflict of interest. However, no authority has been provided to this Court to suggest that such a waiver must be in writing. A party may not merely announce a position and leave it to this Court to discover and rationalize the basis of a claim, nor give an issue cursory treatment with no citation to supporting authority. *People* v *Leonard,* 224 Mich App 569, 588; 569 NW2d 663 (1997). Although it may be best practice to obtain a waiver in writing, MRPC 1.7 does not contain such a requirement

Defendant has also failed to establish that any actual conflict of interest adversely affected his lawyer's performance. See *People v Fowlkes,* 130 Mich App 828 836; 345 NW2d 629 (1983) (the prejudice shown must be actual, not merely speculative). On the contrary, the record demonstrates that Bayot competently and vigorously defended his client. This is evidenced by his nine visits to

> defendant in county jail over a three month span.
> Moreover, Bayot expressed dissatisfaction with an initial
> plea offer of criminal sexual conduct in the third degree
> because he "thought he could do better.' Defendant
> eventually pled guilty to the charge of criminal sexual
> conduct in the second degree.

(ECF No. 1-19, PageID.238-240; emphasis added; internal footnote omitted.)

Powell has failed to show that the state trial court's decision rejecting this claim was contrary to, or an unreasonable application of, clearly established federal law. Powell focuses the majority of his argument attacking the state court's ruling that Bayot's conflict of interest did not adversely affect his representation of Powell and did not cause Powell cognizable prejudice. But the state trial court denied relief on a separate and independent ground: namely, that Powell waived any conflict that may have existed. Indeed, the state court said that the waiver issue was the "primary" issue before it. (*Id.*, PageID.238.) And Powell has failed to show that the state court's treatment of the waiver issue was contrary to, or involved an unreasonable application of, clearly established federal law.

With respect to the waiver issue, Powell first contends that the conflict "was not" waived. (Pet., ECF No. 1, PageID.41.) In support of this argument, Powell cites only one case – the Supreme Court's decision in *Glasser v. United States*, 315 U.S. 60 (1942). In *Glasser*, the Supreme Court held that a trial court should "indulge every reasonable presumption against the waiver" of an actual conflict of interest, *id.* at 70, and the Supreme Court held that the record before it was insufficient to

support a finding that the defendant waived such a conflict. But the evidence of waiver before the trial court in this case was stronger than in *Glasser*. In *Glasser*, the defendant merely remained silent when the issue of a conflict was raised, and he did not expressly agree to waive the conflict. *See id*. at 69. In Powell's case, in contrast, Bayot directly testified that he informed Powell that he was representing Sheldon in the parental rights termination case and that Powell "waived" any conflict (11/17/2014 Evid. Hrg. Tr. at 64, ECF No. 1-17, PageID.213.) Powell attacks Bayot's testimony and highlights certain potential inconsistencies in the testimony, but the state trial court found the testimony to be credible. And while Powell's criticisms of Bayot's testimony are reasonable, he has not persuaded this Court that the state trial court's acceptance of Bayot's testimony was *unreasonable*.[4] Nor has Powell cited any Supreme Court cases (or any other cases for that matter) that hold that evidence like Bayot's testimony is insufficient to (1) overcome the presumption against waiver and (2) support a finding that a defendant waived a conflict of interest.[5] Under these circumstances, and in light of the AEDPA deference owed to the state court's factual findings and legal determinations, Powell has not shown that

---

[4] Powell has also not shown that the trial court acted unreasonably when it rejected his own testimony that was directly contrary to Bayot's testimony.

[5] For instance, Powell has not cited any case law concerning whether, in assessing the validity of the waiver, the state trial court was required to inquire deeper into the details of the communications between Bayot and Powell concerning the nature of the conflict and/or its impact upon Bayot's ability to represent Powell.

he is entitled to habeas relief on the ground that he did not waive Bayot's purported conflict of interest.

Second, Powell argues that even if he did not waive Bayot's conflict of interest, he is still entitled to relief based upon the conflict because the conflict "could not be waived." (Pet., ECF No. 1, PageID.41.) *Glasser* is again the only case that Powell cites in support of this argument. But the Supreme Court in *Glasser* did not address whether any particular conflicts are not waivable. And Powell has not cited any Supreme Court decision – or any decision from any court – that holds that a defendant may not waive a conflict like the one that may have existed here. Given Powell's failure to cite any "clearly established federal law" in support of his argument that the conflict here was not waivable, the Court cannot grant habeas relief on that basis.

## C

The Court next turns to Powell's claim that Bayot rendered ineffective assistance because Bayot failed to inform him (Powell) that as consequence of pleading no contest to the CSC2 charge, he would be subject to lifetime electronic monitoring. The state trial court considered this claim in the context of Powell's motions to withdraw his CSC2 plea, and rejected it:

> To the extent that defendant's claim rests on an assertion that his plea was due to ineffective assistance of counsel, the proper focus is on whether the plea was made voluntarily and understandingly. *In re Oakland*

> *Co Prosecutor,* 191 Mich App 11 3, 120; 477 NW2d
> 455 (1991). Although defendant argues Bayot did not
> advise him of the lifetime monitoring requirement, he
> freely admits the Court informed him prior to entry of
> his plea. There is no significant indication that
> defendant's plea was involuntary. Moreover, subjective
> dissatisfaction with a possible sentence is not sufficient
> grounds for withdrawing a plea, if that is defendant's
> true motivation. See e.g., *People v Haynes (After
> Remand),* 221, Mich App 559; 562 NW2d 241 (1997).

(ECF No. 1-19, PageID.240.)

Powell has failed to show that the state trial court's decision rejecting his

conflict of interest claim was contrary to, or an unreasonable application of, clearly

established federal law.  To be valid, a guilty plea must be made voluntarily and

intelligently." *King v. Dutton*, 17 F.3d 151, 153 (6th Cir. 1994) (citing *Boykin v.

Alabama*, 395 U.S. 238, 242 (1969)). In addition, "[t]he plea must be made with

knowledge of the 'relevant circumstances and likely consequences.'" *Id.* (citing

*Brady v. United States*, 397 U.S. 742, 748 (1970)).

Here, Powell has failed to show that Bayot's alleged ineffectiveness caused

him (Powell) to involuntarily or unknowingly enter his no contest plea.  Before

Powell offered that plea, the state trial court told him that his sentence "does involve

lifetime electronic monitoring." (Plea Hrg. Tr., ECF No. 5-6, PageID.415.)  Then

there was a short break in the proceedings.  When the parties returned, and before

Powell offered his plea, Bayot stated on the record that Powell "ha[d] now been

advised of the necessity of the electronic monitoring." (*Id.*, PageID.416.)  Because

Powell was twice advised on the record that he could be subject to lifetime electronic monitoring, the state court did not unreasonably conclude that he entered his plea knowing that he was subject to lifetime electronic monitoring. Likewise, the state trial court did not unreasonably reject Powell's ineffective assistance claim based upon Bayot's failure to inform him, before the day of the plea hearing, of the monitoring requirement. The state court did not unreasonably conclude that any deficiency in Bayot's representation did not prejudice Powell because Powell was fully informed of the monitoring before entering his plea. Accordingly, Powell is not entitled to federal habeas relief on this claim.

## V

Finally, the Court turns to Powell's argument that he was denied due process when "he was sentenced to mandatory lifetime electronic monitoring without an assessment of risk or consideration of his likelihood to re-offend." (Pet., ECF No. 1, PageID.13.) Powell did not raise this issue in the state trial court. However, he did raise the claim in his application for leave to appeal in the Michigan Court of Appeals, and, as noted above, that court denied leave to appeal for "lack of merit" in the grounds presented. (ECF No. 1-25, PageID.348.) That denial is a merits adjudication for AEDPA purposes. *See Werth*, 692 at 493 (holding that AEDPA deference applies to a Michigan Court of Appeals order that used the same "lack of merit" language used in that court's order in this case).

Powell has not shown that the Michigan Court of Appeals' rejection of this claim was contrary to, or involved an unreasonable application of, any decisions of the United States Supreme Court. In support of this claim, Powell cites various state statutes and state court decisions on this issue. (*See* Pet., ECF No. 1, PageID.48-50.) But he does not cite any decisions from the United States Supreme Court holding that a sentence of mandatory lifetime electronic monitoring without an individualized risk assessment violates a defendant's due process rights. Accordingly, Powell has not shown that he is entitled to federal habeas relief on this claim.

## VI

In order to appeal the Court's decision, Powell must obtain a certificate of appealability, which requires a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant must show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented are adequate to deserve encouragement to proceed further. *See Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). A federal district court may grant or deny a certificate of appealability when the court issues a ruling on the habeas petition. *See Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason could debate the Court's conclusion with respect to Powell's ineffective assistance claim arising out of Bayot's alleged conflict of interest. Jurists of reason could not debate the Court's conclusion that he has failed to demonstrate an entitlement to habeas relief with respect to any of his other claims. Therefore, the Court will **GRANT** Powell a certificate of appealability limited only to his claim of ineffective assistance due to Bayot's alleged conflict of interest. A certificate of appealability is **DENIED** in all other respects.

## VII

For all of the reasons stated above, the Court (1) **DENIES WITH PREJUDICE** Powell's petition for a writ of habeas corpus (ECF No. 1) and (2) a Certificate of Appealability is **GRANTED IN PART AND DENIED IN PART**.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated: February 10, 2020

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on February 10, 2020, by electronic means and/or ordinary mail.

s/Holly A. Monda
Case Manager
(810) 341-9764